**BARTHEL LEGAL, APC**
Nicholas Barthel, Esq. (319105)
nick@barthelbarthel.com
2173 Salk Ave., Ste. 250
Carlsbad, CA 92008
Telephone: (760) 259-0033
Facsimile: (760) 536-9010

[Additional Attorneys on Signature Page]

*Attorney for Plaintiff*
*Jawdat Ziq*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAWDAT ZIQ,** | **Case No.:** |
| Plaintiff | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** |
| v. | **A. FAIR CREDIT REPORTING ACT;** |
| **BANK OF AMERICA, N.A.; CITIBANK, N.A.; ONEMAIN FINANCIAL GROUP, LLC; COMMERCE BANK; THE BANK OF MISSOURI; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; AND TRANS UNION, LLC** | **B. CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT;** |
| | **C. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT;** |
| Defendants | **D. CALIFORNIA IDENTITY THEFT ACT;** |
| | **JURY TRIAL DEMANDED** |

Jawdat Ziq, the Plaintiff herein, by and through the undersigned counsel, alleges and complains of Defendants as follows:

## **PRELIMINARY STATEMENT**

1.      This is an action for actual, statutory, treble and punitive damages, injunctive relief, and statutory attorney's fees and costs brought pursuant to the Fair Credit Reporting Act ("FCRA"), California Information Practices Act, California Business & Professions Code, Breach of Contract, and Declaratory Relief.

2.      Plaintiff is the victim of identity theft involving, *inter alia*, a defaulted auto loan for $90,514, a defaulted loan for $11,847, and two credit cards in default with balances of $6,917 and $2,263, respectively, and a third defaulted credit card, none of which were authorized by Plaintiff and from which he did not receive any benefit.

3.      The Defendants consist of three national credit reporting agencies, Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union") (collectively, "CRA Defendants"); and five "furnishers of information" to those agencies:  Bank of America, N.A. ("BANA"), Citibank, N.A. ("Citibank"), OneMain Financial Group, LLC ("OneMain"), Commerce Bank, and The Bank of Missouri ("BOM") (collectively, "Furnisher Defendants").

4.      Plaintiff discovered the fraudulent loans and extensions of credit on his credit report and disputed the same directly with the CRA Defendants who, upon information and belief, communicated the same to the Furnisher Defendants.

5.      Upon being made aware of the identity theft, the Furnisher Defendants denied Plaintiff's disputes and continued reporting the unauthorized loans and credit accounts to the CRA Defendants.

6. Moreover, the CRA Defendants, *inter alia*, failed to conduct their own reasonable investigations and correct their consumer reports (which were then subsequently conveyed to third parties)

7. Plaintiff brings this action for damages resulting from Defendants' inaccurate reporting of tradelines on his credit reports.

8. The Furnisher Defendants are each a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2, *et seq.*).

9. The Furnisher Defendants violated the FCRA by:

    a. failing to conduct a reasonable investigation of Plaintiff's dispute(s),

    b. failing to review all relevant information provided by consumer reporting agencies, and

    c. failing to promptly modify, delete, or permanently block any information it could not verify as accurate, in violation of 15 U.S.C. §1681s-2(b)(1).

10. The CRA Defendants are each a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(p), *et seq.*).

11. The CRA Defendants violated the FCRA by:

    a. failing to conduct a reasonable reinvestigation of Plaintiff's dispute(s) and delete or modify that information, in violation of § 1681i, and upon information and belief, failing to perform certain other related duties pursuant to and in violation of that same provision; and

    b. failing to maintain procedures to ensure the maximum possible accuracy of the information it reported about Plaintiff, in violation of § 1681e(b).

12.     As a direct and proximate result of Defendants' negligent and willful actions, conduct, and omissions, including publishing inaccurate derogatory information to third parties, Plaintiff suffered cognizable actual damages (both economic and non-economic) including but not limited to draining him of his life savings, rejection of employment, credit denials, damage to his reputation, sleeplessness, emotional distress, anxiety, depression, embarrassment, aggravation, and frustration.

13.     Each of the Defendants' willful violations entitles Plaintiff to an award of punitive damages.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

15.     Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

16.     Jurisdiction over Plaintiff's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

17.     Venue is proper in this District because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conducts business here.

## PARTIES

18.     Plaintiff Jawdat Ziq is a natural person and citizen of California residing in Tustin, California.

19.     Plaintiff is a "consumer" as defined by each of the relevant statutes.

20.     Defendant Bank of America, N.A ("BANA") is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by each of the relevant statutes.

21.     Bank of America, N.A. is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2, *et seq.*).

22.     Defendant Citibank, N.A ("Citibank") is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by each of the relevant statutes.

23.     Citibank, N.A. is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2, *et seq.*).

24.     Defendant OneMain Financial Group, LLC ("OneMain") is a Delaware limited liability company, duly authorized and qualified to do business in California.

25.     OneMain is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2, *et seq.*).

26.     Defendant Commerce Bank is state chartered banking association formed under the laws of Missouri and was, at all times relevant to this Complaint, a financial institution as defined by each of the relevant statutes.

27.     Commerce Bank is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2, *et seq.*).

28.     Defendant The Bank of Missouri ("BOM") is state chartered banking association formed under the laws of Missouri and was, at all times relevant to this Complaint, a financial institution as defined by each of the relevant statutes.

29.     BOM is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2, *et seq.*).

30.     Defendant Equifax Information Services LLC ("Equifax"") is a Georgia limited liability company, duly authorized and qualified to do business in California.

31.     Equifax is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)).

32.     Defendant Experian Information Solutions, Inc. is an Ohio corporation, duly authorized and qualified to do business in California.

33.     Experian is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)).

34.     Defendant Trans Union, LLC ("Trans Union") is a Delaware limited liability company, duly authorized and qualified to do business in California.

35.     Trans Union is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)).

## FACTUAL ALLEGATIONS

### Bank of America

36.     In or about December 2022, Plaintiff discovered an unauthorized Bank of America auto loan (the "BANA Account") on his credit reports with the CRA Defendants.

37.     Although Plaintiff maintained a deposit account with BANA, Plaintiff did not initiate or authorize the BANA Account, nor did he receive any of the funds from the loan, nor any property related to the loan.

38.     On February 28, 2023, Plaintiff disputed the BANA Account by submitting an identity theft complaint to the Federal Trade Commission ("FTC").

39.     By letter dated February 28, 2023, Plaintiff also disputed the BANA Account with BANA by filing a complaint with Consumer Financial Protection Bureau.

40.     By letter dated March 21, 2023, BANA replied to Plaintiff's CFPB dispute, denied Plaintiff's assertion of identity theft, and stated, "[BANA's] research found no records of a[n identity theft] claim."

41. By letter dated April 5, 2023, BANA again denied Plaintiff's identity theft claim.

42. In or about early March 2023, Plaintiff also disputed the BANA Account with Experian.

43. Initially, by letter dated March 16, 2023, Experian replied to Plaintiff's dispute and indicated that it had removed the BANA Account.

44. However, in a letter dated April 19, 2023, Experian indicated that the BANA Account had been updated and it remained on Plaintiff's credit report.

45. Subsequently, in a letter dated June 7, 2023, Experian indicated that it had refused to block items in Plaintiff's credit report related to identity theft.

46. On May 3, 2023, Plaintiff filed a police report with the Irvine Police Department identifying the BANA Account as fraudulent.

47. By letters dated July 14, 2023, Plaintiff sent disputes to each of the CRA Defendants identifying the BANA Account as fraudulent and attached supporting documents, including the FTC identity theft complaint, the police report, and a California Attorney General identity theft affidavit.

48. Upon information and belief, the CRA Defendants forwarded each dispute forwarded to BANA.

49. Upon information and belief, BANA confirmed the accuracy of and continued providing the BANA Account data to the CRA Defendants.

50. Despite the detailed explanation and supporting documentation provided by Plaintiff, each of the CRA Defendants continued reporting the BANA Account on Plaintiff's credit reports, which were distributed to third parties.

51. The BANA Account appeared on credit reports prepared by each of the CRA Defendants as a delinquent account, with a past due balance of $96,373 noted as "charged off."

52.     On or about April 4, 2024, without prior notice or consent from Plaintiff, BANA "took $30,349.71 from [Plaintiff's] deposit account . . . and applied it to the outstanding balance on [the BANA Account]."

53.     BANA's unauthorized withdrawal constituted Plaintiff's life savings and left Plaintiff with $1,000, resulting in significant financial hardships, including bounced checks and an inability to pay regular bills.

54.     After Plaintiff received notice from BANA that it had seized his of funds, Plaintiff submitted yet another affidavit to BANA identifying that the BANA Account was the result of identity theft.

55.     On or about April 26, 2024, BANA returned $30,349.71 of Plaintiff's funds to his deposit account.

56.     On June 26, 2024, without notice, BANA terminated Plaintiff's access to his funds on deposit and closed Plaintiff's deposit account, notifying him that he would receive his funds within 45 days.

## **Citibank**

57.     On or about May 5, 2022, Plaintiff discovered an unauthorized Bloomingdale's credit card issued by Citibank (the "Citibank Account") on his credit reports with the CRA Defendants.

58.     Plaintiff did not initiate or authorize the Citibank Account, nor did he receive any benefit from the credit card (including any products or services purchased with the card).

59.     On or about May 16, 2022, Plaintiff contacted the Fraud Department at Citibank and disputed the Citibank Account.

60.     The Citibank representative informed Plaintiff that the Citibank Account would be cancelled and reassured Plaintiff that he would not be held liable for any unauthorized charges incurred on the card.

61.     However, Citibank continued to report the Citibank Account to the CRA Defendants.

62.     On June 13, 2022, Plaintiff filed a report with the Irvine Police Department identifying the Citibank Account as fraudulent.

63.     Throughout the latter part of 2022, Plaintiff submitted disputes to Trans Union identifying the Citibank Account as fraudulent and attached supporting documents, including the police report.

64.     Upon information and belief, Trans Union forwarded each of Plaintiff's disputes to Citibank.

65.     Upon information and belief, Citibank confirmed the accuracy of and continued providing the Citibank Account data to Trans Union as well as the other CRA Defendants.

66.     On November 29, 2022, Plaintiff disputed the Citibank Account by filing a complaint with Consumer Financial Protection Bureau complaining about Trans Union's inclusion of fraudulent accounts, including the Citibank Account, which included an identity theft affidavit and police report.

67.     Despite receipt of the disputes and the detailed explanation and supporting documentation provided by Plaintiff, Citibank and each of the CRA Defendants continued reporting the Citibank Account on Plaintiff's credit reports, which were distributed to third parties.

68.     In or about February 2024, Plaintiff sent disputes to Equifax via its web portal identifying the Citibank Account as fraudulent and attached supporting documents, including the police report.

69.     Upon information and belief, Equifax forwarded Plaintiff's dispute to Citibank.

70.    Upon information and belief, Citibank confirmed the accuracy of and continued providing the Citibank Account data to Equifax as well as the other CRA Defendants.

71.    By letter dated March 15, 2024, Equifax denied Plaintiff's dispute of the Citibank Account, asserting that it had "verified" that the account belonged to Plaintiff.

72.    Despite the detailed explanation and supporting documentation provided by Plaintiff, Citibank and each of the CRA Defendants continued reporting the Citibank Account on Plaintiff's credit reports, which were distributed to third parties.

73.    The Citibank Account appeared on credit reports prepared by each of the CRA Defendants as a delinquent account, with a past due balance of $2,263 noted as "charged off."

### OneMain

74.    In or about March 2021, Plaintiff discovered unauthorized loan from OneMain (the "OneMain Account") on his credit reports with the CRA Defendants.

75.    Plaintiff did not initiate or authorize the OneMain Account, nor did he receive any benefit from the loan.

76.    On March 6, 2021, Plaintiff filed a police report with the Santa Ana Police Department identifying the unauthorized OneMain Account.

77.    On March 6, 2021, Plaintiff also filed a complaint with the CFPB disputing the OneMain Account and attaching the police report.

78.    By letter dated March 12, 2021, OneMain denied Plaintiff's CFPB dispute of the OneMain Account.

79.    On March 22, 2021, Plaintiff completed an FTC identity theft affidavit, identifying the OneMain Account as fraudulent.

80.    On March 24, 2021, Plaintiff disputed the OneMain Account with the CRA Defendants, as well as with OneMain directly, including the notarized identity theft affidavit and police report.

81.    Upon information and belief, the CRA Defendants sent each of these disputes to OneMain.

82.    Upon information and belief, despite the detailed explanation and supporting documentation provided by Plaintiff, OneMain confirmed the accuracy of and continued reporting the OneMain Account to the CRA Defendants.

83.    Despite the detailed explanation and supporting documentation provided by Plaintiff, OneMain and each of the CRA Defendants continued reporting the OneMain Account on Plaintiff's credit reports, which were distributed to third parties.

84.    On October 2, 2021, Plaintiff submitted a supplemental identity theft report to the FTC again identifying the OneMain Account as fraudulent.

85.    On October 4, 2021, Plaintiff filed an additional police report with the Irvine Police Department disputing the OneMain Account.

86.    In or about February 2024, Plaintiff disputed the OneMain Account with Equifax via its web portal, attaching the police reports and FTC identify theft affidavits.

87.    Upon information and belief, Equifax forwarded this dispute to OneMain.

88.    Upon information and belief, despite the detailed explanation and supporting documentation provided by Plaintiff, OneMain confirmed the accuracy of and continued reporting the OneMain Account to the CRA Defendants, including Equifax.

89.    Despite the detailed explanation and supporting documentation provided by Plaintiff, OneMain and each of the CRA Defendants continued

reporting the OneMain Account on Plaintiff's credit reports, which were distributed to third parties.

90.     The OneMain Account appeared on credit reports prepared by each of the CRA Defendants as a delinquent account, with a past due balance of $11,847 noted as "charged off."

### Commerce Bank

91.     In or about February 2024, Plaintiff discovered an unauthorized credit card issued by Commerce Bank (the "Commerce Bank Account") on his credit report with Equifax.

92.     Plaintiff did not initiate or authorize the Commerce Bank Account, nor did he receive any benefit from the credit card (including any products or services purchased with the card).

93.     In or about February 2024, Plaintiff sent disputes to Equifax via its web portal identifying the Commerce Bank Account as fraudulent and attached supporting documents.

94.     Upon information and belief, Equifax forwarded Plaintiff's dispute to Commerce Bank.

95.     Upon information and belief, Commerce Bank confirmed the accuracy of and continued providing the Commerce Bank Account data to Equifax as well as the other CRA Defendants.

96.     By letter dated March 15, 2024, Equifax denied Plaintiff's dispute of the Commerce Bank Account, asserting that it had "verified" that the account belonged to Plaintiff.

97.     Despite the detailed explanation and supporting documentation provided by Plaintiff, Commerce Bank and Equifax continued reporting the Commerce Bank Account on Plaintiff's credit reports, which were distributed to third parties.

98. The Commerce Bank Account appeared on credit reports prepared by each of the CRA Defendants as a delinquent account, with a past due balance of $6,917 noted as "charged off."

### **The Bank of Missouri**

99. In or about 2019, Plaintiff discovered an unauthorized credit card issued by BOM (the "BOM Account") on his credit reports.

100. Plaintiff did not initiate or authorize the BOM Account, nor did he receive any benefit from the credit card (including any products or services purchased with the card).

101. Plaintiff disputed the BOM Account, including through the Consumer Financial Protection Bureau, and understood that BOM and the CRA Defendants had removed the BOM Account from his credit reports.

102. In or about February 2024, Plaintiff discovered the BOM Account was appearing on his Equifax credit report.

103. In or about February 2024, Plaintiff sent a dispute to Equifax via its web portal identifying the BOM Account as fraudulent and attached supporting documents.

104. Upon information and belief, Equifax forwarded Plaintiff's dispute to BOM.

105. Upon information and belief, BOM confirmed the accuracy of and continued providing the BOM Account data to Equifax as well as the other CRA Defendants.

106. By letter dated March 15, 2024, Equifax denied Plaintiff's dispute of the BOM Account, asserting that it had "verified" that the account belonged to Plaintiff.

107.    Despite the detailed explanation and supporting documentation provided by Plaintiff, Equifax continued reporting the BOM Account on Plaintiff's credit reports, which were distributed to third parties.

108.    The BOM Account appeared on credit reports prepared by Equifax as a delinquent account and was noted as "charged off."

### Damages

109.    As a result of the CRA Defendants' and the Furnisher Defendants' refusals to correct the inaccurate information on Plaintiff's credit reports and failures to conduct reasonable investigations, Plaintiff continues to suffer harm to his creditworthiness, reputation, and emotional well-being, including credit denials, higher interest rates, emotional distress, anxiety, depression, sleep loss, embarrassment, aggravation, and frustration.

110.    Based on his inaccurate, damaged credit reports, Plaintiff received credit denials on applications for multiple loans and Plaintiff has been denied offers of employment (which reviewed Plaintiff's credit history as a qualification).

## FIRST CAUSE OF ACTION

### Fair Credit Reporting Act § 1681e(b) and § 1681i

### Against the CRA Defendants

111.    Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

112.    Each of the CRA Defendants violated multiple sections of 15 U.S.C. § 1681i by its acts and omissions including but not limited to:

a.    failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file in violation of § 1681i(a)(1);

b. by failing to review and consider all relevant information submitted by Plaintiff in violation of § 1681i(a)(4); and

c. by failing to properly delete the disputed inaccurate items of information from Plaintiff's credit files or modify item of information upon a lawful reinvestigation in violation of § 1681i(a)(5).

113. Each of the CRA Defendants violated 15 U.S.C. § 1681e(b) by its conduct, acts and omissions including but not limited to failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of his credit reports and credit files that the CRA Defendants published and maintained.

114. As a result of the CRA Defendants' violations of § 1681i and § 1681e(b), Plaintiff suffered actual damages including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, anguish and the other damages set forth herein.

115. These violations of § 1681i and § 1681e(b) were willful, rendering the CRA Defendants liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

116. In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

## SECOND CAUSE OF ACTION

### Fair Credit Reporting Act § 1681c-2

### Against the CRA Defendants

117. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

118.   Plaintiff repeatedly submitted ample evidence of the fact that he was an identity

theft victim.

119.   Plaintiff further supported the fact that he was an identity theft victim by providing a police reports and FTC identity theft reports.

120.   The CRA Defendants should have blocked the identity theft information at the outset.

121.   As a result of the CRA Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the information which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the information which was the product of identity theft.

122.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the CRA Defendants.

123.   The CRA Defendants violated 15 U.S.C. §1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

124.   The CRA Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

125. In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

## THIRD CAUSE OF ACTION

### Fair Credit Reporting Act § 1681s-2(b)

### Against The Furnisher Defendants

126. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

127. Congress enshrined within the FCRA the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681(a)(4).

128. Congress stated plainly the purpose of the FCRA, namely "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. §1681(b).

129. The Furnisher Defendants violated §1681s-2(b) by their acts and omissions, including, but not limited to:

    a. failing to conduct a reasonable investigation of Plaintiff's dispute(s),

    b. failing to review all relevant information provided by consumer reporting agencies, and,

    c. failing to promptly modify, delete, or permanently block any information it could not verify as accurate, in violation of §1681s-2(b)(1).

130.    As a result of the Furnisher Defendants' violations of §1681s-2(b)(1), Plaintiff suffered actual damages including but not limited to loss of credit, damage to reputation, embarrassment, humiliation, anguish and the other damages set forth herein.

131.    These violations of §1681s-2(b)(1) were willful, rendering the Furnisher Defendants liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

132.    In the alternative, the Furnisher Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

## FOURTH CAUSE OF ACTION

### Identity Theft Law, California Civil Code §1798, et seq.

### Against The Furnisher Defendants

133.    Plaintiff realleges and incorporates by reference herein all of the allegations set forth above.

134.    Plaintiff is a "victim of identity theft" as defined in Civil Code §1798.92(d) because he had his personal identification information used without authorization by another to obtain credit, goods, services, money or property and did not use or possess the credit, goods, services, money or property obtained by the identity theft, and filed a police report in this regard pursuant to section 530.5 of the Penal Code.

135.    Each of the Furnisher Defendants is a "Claimant" as that term is defined in Civil Code §1798.92(a) because they purport to have a claim for money or an interest in property in connection with a transaction procured through identity theft.

136. An unknown person used Plaintiff's personal identifying information (defined in Civil Code § 1798.92(c)) to make the Fraud Transactions.

137. Plaintiff filed a police report pursuant to Penal Code section 530.5 in which he details the nature of his victimization and the Furnisher Defendants' ultimate negative resolution to the matter.

138. After filing the police report and more than 30 days before filing the complaint in Court, Plaintiff notified the Furnisher Defendants that he is the victim of identity theft.

139. More than 30 days prior to the filing of the complaint in Court, Plaintiff sent copies of the police report to the Furnisher Defendants.

140. The Furnisher Defendants failed to investigate diligently Plaintiff's notification of identity theft.

141. Despite Plaintiff continuously advising the Furnisher Defendants of his victimization, the Furnisher Defendants continued to hold Plaintiff accountable for the unauthorized accounts.

142. Under section 1798.93, Plaintiff brings this action against the Furnisher Defendants to establish that he is a victim of identity theft.

143. From March 2021 to July 14, 2023, Plaintiff repeatedly contacted the Furnisher Defendants, either over phone, email, or through the submission of written correspondence, regarding the theft of his identity and how it was linked to the fraudulent accounts.

144. During his communications with the Furnisher Defendants, Plaintiff supplied them with proof of his victimization and further showed that he was not responsible for the transactions in question.

145. Despite the overwhelming evidence provided to them by Plaintiff and his counsel, the Furnisher Defendants failed to diligently investigate Plaintiff's notification of the identity theft.

146.    Plaintiff brings this action for actual damages, and declaratory and injunctive relief, pursuant to Civil Code §1798.93, based on the fact that Plaintiff was the victim of identity theft.

147.    Pursuant to Civil Code §1798.93(c)(1), Plaintiff is entitled to a declaration that he is not obligated on any claim of the Furnisher Defendants for money or property.

148.    Plaintiff is entitled to a declaration that any security interest or other interest that the Furnisher Defendants may have in the unauthorized accounts he allegedly owns or owned is void and/or unenforceable.

149.    Pursuant to Civil Code §1798.93(c)(3), Plaintiff is entitled to an injunction restraining the Furnisher Defendants from collecting or attempting to collect from him on its alleged claims, from enforcing or attempting to enforce any security interest or other interest in the unauthorized accounts in connection with the Furnisher Defendants' claims, and from enforcing or executing on any judgment against Plaintiff on such claims.

150.    Pursuant to Civil Code §1798.93(c)(6), Plaintiff is entitled to a civil penalty of $30,000.00 against each of the Furnisher Defendants.

151.    As a result, Plaintiff has suffered actual damages and harm resulting from the Furnisher Defendants' actions as heretofore alleged, including but not limited to worry, emotional distress, anxiety, humiliation, and out-of-pocket expenses the exact amount of which is to be proven by the trier of fact.

152.    The forgoing acts by the Furnisher Defendants were willful and knowing violation of Civil Code section 1798.93.

153.    Plaintiff has incurred reasonable and necessary costs and attorney fees in the preparation and prosecution of this action and seeks reimbursement of his attorney's fees and costs pursuant to Civil Code §1798.93(c)(5).

# FIFTH CAUSE OF ACTION

## Business & Professions Code §17200, et seq.

## Against The Furnisher Defendants

154.   Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

155.   The Furnisher Defendants engaged in unfair acts and practices with respect to their services by denying to block transactions alleged to be unauthorized without first conducting a reasonable inquiry; by denying to block transactions alleged to be unauthorized despite finding that the transactions were unauthorized; by denying transactions alleged to be unauthorized that it has no legitimate basis to conclude were authorized; by denying requests to reverse unauthorized transactions without notifying the accountholder of the accountholder's right to reproductions of all documents on which it relied in reaching its decision; and by establishing sub-standard security practices and procedures described herein.

156.   The acts and practices complained of herein constitute unfair business practices because they are immoral, unethical, oppressive, unscrupulous, unconscionable, substantially injurious to the general public, and offensive to public policy.

157.   The Furnisher Defendants' acts and practices were likely to deceive Plaintiff and the public regarding their rights.  The Furnisher Defendants failed to complete investigate the fraudulent transactions, denied transactions were fraudulent with no legitimate basis for doing so, placed the burden on Plaintiff and the general public to prove the transactions were unauthorized when the law requires the opposite, and failed to inform Plaintiff and the general public of their legal rights.

158.   The business acts and practices of the Furnisher Defendants constitute fraudulent business practices because they are likely to deceive the public and affected consumers as to their legal rights and obligations, and by use of such deception, may preclude consumers from exercising legal rights to which they are entitled.

159.   As a direct and proximate result of the Furnisher Defendants' acts and unfair practices, Plaintiff and the public were injured and lost money or property, including but not limited to, the harm suffered as a result of fraudulent transfers made their accounts with the Furnisher Defendants.

160.   As a direct and proximate result of the acts and practices described herein, the Furnisher Defendants has received and collected substantial monies or property to which the Furnisher Defendants are not entitled. These illicit profits should be disgorged.

161.   The Furnisher Defendants deals uniformly with a large volume of customers who dispute unauthorized charges. For example, the Furnisher Defendants' misconduct as set forth above is part of uniform policy and practice, as reflected in its standardized, boilerplate form communications. Each of the Furnisher Defendant's deceptive acts and practices set forth above therefore have a broad impact on consumers.

162.   The harm these practices caused to Plaintiff and the general public outweigh their utility, if any.

163.   Plaintiff is entitled under the UCL to enjoin these acts and practices and to obtain restitution of all funds obtained by the Furnisher Defendants by reason of and through the use of these unlawful and fraudulent acts and practices. Pursuant to the UCL, Plaintiff, individually and on behalf of all members of the general public who are, have been, or may be subjected to the Furnisher Defendants' unlawful and fraudulent business acts and practices are entitled to

declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, real or personal, which the Furnisher Defendants acquired by means of such unlawful, unfair and fraudulent business practices.

164.   The unlawful, unfair, and fraudulent business acts and practices of the Furnisher Defendants described herein present a continuing threat to Plaintiff and the public in that the Furnisher Defendants are currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by this Court.

165.   In addition, Plaintiff is entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure §1021.5.

## SIXTH CAUSE OF ACTION

### Declaratory Relief

### Against The Furnisher Defendants

166.   Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

167.   The Furnisher Defendants (BANA, Citibank, OneMain, and Commerce Bank) continue to hold Plaintiff responsible for charges and debts not owed by Plaintiff.

168.   The Furnisher Defendants' conduct, including their continued reporting of incorrect information to the CRA Defendants reflected inaccurate debts owed by Plaintiff, has created a real and reasonable apprehension of liability on Plaintiff's part.

169.   The Furnisher Defendants' conduct constitutes a course of conduct that has brought Plaintiff into adversarial conflict with the Furnisher Defendants.

170.   Plaintiff did not agree to or otherwise authorize the disputed accounts and therefore does not owe the Furnisher Defendants any money with respect to these accounts.

171.   Plaintiff is entitled to and hereby seeks a declaratory judgment that he is not liable for the charges in question on the BANA, Citibank, OneMain, and Commer Bank accounts and that they are not properly reported on his credit reports.

## SEVENTH CAUSE OF ACTION

### California Consumer Credit Reporting Agencies Act

### Against The Furnisher Defendants

172.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

173.   As discussed above, Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c).

174.   Experian, Equifax and Trans Union are each a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

175.   Furnisher Defendants are each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

176.   As detailed above, the causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

177. The previously mentioned acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

178. In the regular course of its business operations, Furnisher Defendants routinely furnishes information to credit reporting agencies pertaining to transactions between Furnisher Defendants and their consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

179. Because Furnisher Defendants are each a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Furnisher Defendants are and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

180. Since Furnisher Defendants received all documents required to determine the inaccuracy of their reporting, Furnisher Defendants should have known to update said reporting.

181. Furnisher Defendants also should have determined that their reporting was inaccurate through review of their own account notes and records; and, as a result of the information provided with Plaintiff's disputes.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seek(s) judgment in his favor and damages against Defendants:

      A.    awarding Plaintiff actual damages, treble damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees; and

      B.    such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demand(s) a trial by jury of all issues triable by jury.

Dated: 1 July 2024

Respectfully submitted,

**BARTHEL LEGAL, APC**

By:  /s/ Nicholas Barthel___
NICHOLAS R. BARTHEL, ESQ
ATTORNEY FOR PLAINTIFF

https://www.barthelbarthel.com/

Evan S. Rothfarb
*Pro Hac Vice Forthcoming*
**Schlanger Law Group, LLP**
80 Broad Street
Suite 3103
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
erothfarb@consumerprotection.net